E-FILED
Wednesday, 22 August, 2018  03:33:26 PM
Clerk, U.S. District Court, ILCD

**[DRAFT AUGUST 22, 2018]**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| **KEWU ZHAN, on behalf of himself** | ) | |
| **and all others similarly situated** | ) | |
| | ) | **No.:  18-CV-** |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **CLASS ACTION** |
| **Patrick F. Hogan,** | ) | |
| **CMB Export LLC**, | ) | |
| | ) | **Judge/** |
| **Defendants** | **)** | **Magistrate** |

**CLASS ACTION COMPLAINT FOR EQUITABLE AND**

**DECLARATORY RELIEF**

Plaintiff Kewu Zhan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through the undersigned counsel, hereby files this Class Action Complaint for Equitable and Declaratory Relief, and states as follows:

**Nature of the Case**

Plaintiff is a Chinese citizen who purchased a limited partnership interest in an investment fund raised, sponsored, managed and controlled by Defendant CMB Export LLC ("CMB") and its Manager, Defendant Patrick F. Hogan ("Hogan").  The term "CMB Fund" shall refer to any investment fund sponsored, managed, or

controlled by CMB and Hogan. According to the CMB web site, there have been some sixty CMB Funds.

Plaintiff is one of numerous investors referred to invest in a CMB Fund by attorney Hui Feng and various affiliated entities under his control (individually and collectively, "Feng").  In return for such referrals, CMB arranged for Feng to receive a commission for each investor referred.  According to estimates from attorney Feng made available to Plaintiff's counsel but not independently verified, he is owed commissions from CMB in the range of $1.5 to 2.0 million dollars.

Feng was sanctioned and barred by the Securities and Exchange Commission (SEC) for acting as an unlicensed broker in referring his immigration clients to invest in various funds including those sponsored and managed by CMB.  *In the Matter of Hui Feng and the Law Offices of Feng & Associates P.C.* (March 12, 2018*), Securities and Exchange Commission v. Hui Feng*, 2017 WL 6551107 (C.D. Cal. August 10, 2017)(imposing disgorgement, civil penalties, and an injunction against Feng for securities fraud and failure to register as a broker-dealer).

During the pendency of its action against Feng (that is, in August 2017), the SEC sent a letter to Hogan stating that CMB should not pay any commissions or compensation to Feng for referring investors, and that CMB should notify the SEC in advance if they planned to do so.  The SEC has not made a decision about what should happen to these funds, but they have been made to understand that Plaintiff's counsel is pursuing this question.

The Plaintiff and the members of the purported class assert that these commissions and other compensation earned in violation of the law are ill-gotten

2

gains that rightfully should be returned to the investors, along with a choice to rescind (or novate/affirm) their investment in the underlying transaction.

Federal and state securities laws provide that when an unlicensed broker facilitates the sale of a security for an issuer and generates a commission, the purchaser has the right to rescind the brokerage agreement as well as the underlying investment, and has the right to recover his funds invested any commissions associated with such investment.

Accordingly, Plaintiff and this class request that CMB make payment to each of them of the respective commissions generated by their investment and for a declaration that they have the right to rescind their investment in any CMB Fund.

## Jurisdiction and Venue

1.      Jurisdiction is proper in federal court pursuant to 28 U.S.C. 1332(a)(2) because this is a civil matter, in excess of the statutory minimum, between subjects of a foreign state (The People's Republic of China) and citizens and entities of the United States.

2.      Jurisdiction is also proper in federal court pursuant to 28 U.S.C. 1331 because this action involves a question of federal law, namely whether the Defendants violated the Securities Exchange Act of 1934, 15 U.S.C. 77q(a), 78j(b), 78o, and 78cc.

3.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(2) as all Defendant Hogan is the Manager of CMB, and Defendant CMB has a principal place of business in Rock Island, Illinois.

4.      This Court has the power to provide equitable and declaratory relief under Article III of the Constitution and under 28 U.S.C. § 2201, 2202.

**The Parties**

5.      Plaintiff Kewu Zhan is a Chinese national.

6.      Defendant Patrick F. Hogan ("Hogan") was at all times relevant hereto the manager of CMB.

7.      Defendant CMB was at all times relevant hereto a California company qualified and registered to do business in the State of Illinois with a principal office in Rock Island, Illinois.

**Factual Allegations Common to All Counts**

8.      Patrick Hogan and CMB set up the CMB Funds under the EB-5 Program of the United States Customs and Immigration Service (USCIS).  CMB is a "regional center" authorized by the USCIS to develop investment vehicles (so-called "EB-5 funds") that are composed of foreigner investors who are recruited through a network of finders, each of whom is paid a commission for referring the investors. Feng was one such finder in privity with CMB, although the exact terms of their referral arrangement are not known at this time.

9.      In a typical EB-5 investment, the investor pays an "administrative fee" and the remainder buys him an interest as a limited partner or unitholder in an EB-5 fund.  The EB-5 fund will then put the fund's money 'at risk' by loaning it to a real estate developer.  If the development ultimately creates 10 jobs per investor,

and the investor submits the proper forms to the USCIS, the investor can obtain conditional and then permanent citizenship.

10.     However, since 2014 there has been a huge backlog of Chinese investors applying for visas through the EB-5 program, and the USCIS has imposed country quotas, which has exacerbated the backlogs so that investors seeking visas are delayed for approval (so-called 'retrogression').  Currently the retrogression is estimated at 10-13 years from the time of making an investment.

11.     There is intense competition among EB-5 fund sponsors to attract Chinese investors for EB-5 funds, and Hogan/CMB had arrangements with numerous finders to supply investors for their growing number of CMB Funds. Typically finders are paid a fee up front and also receive an annual payment based on the amount of the investor's funds.

12.     One of these finders used by Hogan/CMB for referrals was Feng, a U.S. attorney who has set up various overseas referral entities that were controlled from the United States, and operated without a brokerage license.

13.     On information and belief, other investors may have been referred to CMB Funds by immigration lawyer Jason Lee, who like Feng was sanctioned by the SEC for operating as an unlicensed broker-dealer in taking money from regional centers for recommending EB-5 projects.  *In the Matter of Jason Lee* (May 10, 2018). There may have been other unlicensed brokers paid by CMB under similar circumstances, which will come out in discovery.

14.     Plaintiff Zhan is typical in that he received only 21 pages of the investment documents before making his investment – he got a few pages plus the

signature pages. He later got the full package after CMB countersigned, and the entire countersigned package was sent to him through Feng.

15.    At all material times, Feng acted as Zhan's broker for the investment, since Zhan does not read or speak English, and no translated documents were ever sent to him.

16.    Feng represented to Zhan that the investment process would allow him to come to the United States legally in about a year, and Zhan (who is in his 60s) relied on that assurance, even though the retrogression at that point was actually in the range of 8-12 years.

17.    Hogan/CMB took investors from Feng (and possibly other unlicensed brokers) even though Feng was unlicensed.

19.    CMB and Hogan associated with, dealt with, and benefitted from their association with an unlicensed broker-dealer because once the investor was put into a CMB Fund, they drew large management and other fees from such investment.

20.    Feng did not tell Plaintiff that he was an unlicensed broker, nor inform such Plaintiff of the ramifications of such failure to be licensed, and this was a material omission of fact that would have been critical to the investment decision of any reasonable investor.  Nor did CMB/Hogan disclose this to the investors.

## Class Action Allegations

21.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

22.     This action is maintainable as a class action under Rule 23 of the
Federal Rules of Civil Procedure.

23.     **Class Definition.**  The class definition shall be:

> All investors in any CMB-sponsored investment fund that
> were referred to such fund by a person determined by the
> SEC, a state securities regulator, or a court of competent
> jurisdiction to be acting as an unlicensed broker-dealer in
> connection with the purchase and sale of securities.

24.     Plaintiff reserves the right to amend the Class definition if further
information and discovery indicate that the Class should be narrowed, expanded, or
otherwise modified.

25.     All members of the Class were and are similarly affected and deceived
by the failure of the unlicensed brokers to register.

26.     **Numerosity.**   Based on materials from attorney Feng, Plaintiff's
counsel believes that the number of Plaintiffs is somewhere between 20 and 40, and
scattered throughout China and other countries, making joinder impracticable, if
not impossible.  Hogan and CMB will have records of such persons and their contact
information, so they may be notified on the pendency of this action by Court-
approved dissemination methods such as US Mail, electronic mail, Internet postings,
and publication.

27.     **Common Questions of Law and Fact Predominate.**   It is
uncontested that all members of the class have the identical questions of law and
fact:

7

      a.     Whether an investment received by CMB/Hogan was procured through Feng or an unlicensed broker, in violation of federal and state securities law;

      b.     Whether the failure of the broker to disclosed his unlicensed status constituted a material omission of fact;

      c.     Whether (and to what extent) the Defendants or their affiliates or clients owe commissions or other compensation to an unregistered broker in connection with the sale of a security;

      d.     Whether (and to what extent) the Defendant's profited from the investment of the class members referred by unlicensed brokers; and

      e.     Whether the failure to register and the failure to disclose creates a right of recovery and a right of rescission for each investor.

28.   **Typicality.**  The facts surrounding the investment by Plaintiff are typical of what happened with the other investors, since they arose from the same course of conduct by the Defendants.

29.   **Adequacy.**  The Plaintiff has no conflict of interest or unusual fact pattern that would render him an inadequate class representative.  Plaintiff's counsel is associated with attorneys who have conducted numerous class actions in Illinois.

30.     **Predominance and Superiority of Class Action.**   Given the commonality of the issues affecting each investor, which easily predominate over any minor differences, the class action is a superior method of deciding this matter versus case-by-case adjudication.   As the recovery requested by each investor is small, **and is mostly a return of their own money and the profits that it generated**, judicial efficiency favors the class action as a method.

**COUNT I**
**15 U.S.C. 78o**
**UNREGISTERED BROKER-DEALER (FEDERAL)**

31.     Plaintiff re-alleges and reincorporates, as though fully set forth herein, each and every allegation above.

32.     Section 15(a)(1) of the Exchange Act of 1934 makes it unlawful for a person to "effect a transaction in securities" or "attempt to induce the purchase or sale of any security" unless such person is registered with FINRA as a broker-dealer.

33.     Section 29(b) of the Exchange Act provides that every contract made in violation of any provision of the broker-dealer registration requirements "shall be void." The voidable transaction gives the investor a right of rescission to both the brokerage relationship and, if he so chooses, to rescind the underlying investment.

34.     Both the SEC and the federal court in the Central District of California have concluded that Feng was acting as an unlicensed broker dealer when he effectuated his investments into EB-5 funds, some of which were CMB Funds.  The SEC told CMB/Hogan that Feng was in violation of the securities laws and that

they should therefore not pay him any commissions or other compensation because such money was tainted; but there is no reason that it should be retained by CMB when it was generated by and from the Plaintiff class.

35.     CMB and Hogan were dealing with Feng's entities and were in a position to discover by simple due diligence that Feng was unlicensed.  Even if they were not actually aware of this, they acquired rights and profited from their relationship with Feng, to the detriment of class members.

36.     The exact amount of money paid by CMB to Feng for each investor is unknown, although it is believed that Feng may have transferred clients to CMB either directly to their headquarters in Illinois or though CMB's affiliate in Switzerland, CMB GmbH, which is also managed by Hogan.  As a result, all unlicensed brokerage leads to profits for the unlicensed broker and Hogan/CMB.

37.     Transaction-based compensation of the type between CMB and Feng is is the hallmark of broker-dealer activity.

38.     Section 29(b) of the Exchange Act provides the remedy of restitution and rescission for unlicensed broker-dealer activity:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder

> with actual knowledge of the facts by reason of which the
> making or performance of such contract was in violation of
> any such provision, rule, or regulation . . .

The contractual relationship between each class member and the CMB Funds involves the violation of broker-dealer registration, which renders the contracts void. The remedy is that all related contracts – both the brokerage contract and the underlying investment – are both void. The parties may thereafter choose to novate (or reaffirm) the investment relationship, but they both get a right of rescission.

39.     Zhan had no reason to know that he was wrongfully dealing with an unlicensed broker until he retained US counsel in June of 2018, at which time Plaintiff's counsel discovered that Feng had acted for Plaintiff as an unregistered broker-dealer.  Zhan cannot speak or read English.

WHEREFORE, Plaintiff asks this Court for an Order declaring that the Defendants' sale of CMB Fund securities through an unlicensed broker-dealer gives each member of the Plaintiff class a right to void his brokerage arrangement and his underlying investment, allowing full restitution to the Plaintiff class of all commissions and compensation due to the unlicensed brokers and a rescission right to the return of all investment funds, plus costs, interest, and fees.

## COUNT II
### 15 U.S.C. 78o
### UNREGISTERED BROKER-DEALER (STATE)

40.     Plaintiff re-alleges and reincorporates, as though fully set forth herein, each and every allegation above.

11

41.     The transactions described above were facilitated by a broker-dealer that failed to be licensed by the State of Illinois under the Illinois Securities Act, 815 ILCS 5/8 (note that the definition of 'dealer' includes a 'broker,' 815 ILCS 5/2.7).

42.     The Illinois Securities Act, 815 ILCS 5/13, provides joint and several liability of the broker-dealer and the issuer for a sale of securities if the broker-dealer is unregistered:

> Private and other civil remedies;  securities.
>
> A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section;  and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer, internet portal, or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer, controlling person, underwriter, dealer, or internet portal is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable to the purchaser as follows:
>
> (1)  for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold or, where the securities were not received, of any contract made in respect of the sale; . . .
>
> B. Notice of any election provided for in subsection A of this Section shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought, by registered

12

mail or certified mail, return receipt requested, addressed
to the person to be notified at his or her last known
address with proper postage affixed, or by personal
service.

43.     As stated above, the Plaintiffs all purchased securities within the State

of Illinois through an entity qualified to do business in this district which operated

as an unlicensed broker-dealer.

44.      CMB was the issuer and it participated in the transaction by

acquiring rights and funds of the investor through the actions of an unlicensed

broker-dealer.

45.     The purchaser's attorney was retained in June 2018 and did not have

actual knowledge under the Illinois Securities Act of the failure to register until a

few months ago, and Plaintiff himself does not speak English and could not have

known to inquire of the unregistered status of the broker-dealer.

WHEREFORE, under the Illinois Securities Act, the Plaintiff class members

ask for a right to void their brokerage arrangement and underlying investment,

allowing full restitution to the Plaintiff class of all commissions and compensation

due to the unlicensed brokers and a right to rescission and return of the full

investment plus 10% annual interest.


## COUNT III
### 15 U.S.C. 78j (17 CFR. 240.10b-5)
### FRAUDULENT MISPRESENTATION AND OMISSION
### OF MATERIAL FACTS

46.     Plaintiff re-alleges and reincorporates, as though fully set forth herein,

each and every allegation above.

47.    Section 10b of the Exchange Act (15 U.S.C. 78j) provides as follows:

It shall be unlawful for any person, directly or indirectly . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

In furtherance of Rule 10(b), the Commission enacted Rule 10b-5 (17 CFR 240.10b-5) which makes clear that it is unlawful to omit to make a statement that is necessary to clarify a misstatement or is necessary to disclose to give the investor a full set of material facts:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

A "material fact" under Rule 10b-5 is any fact that a reasonable investor would find

14

important in making a decision whether to invest.

48.     According to both the SEC and the federal court for the Central District of California, Feng's unlicensed actions constituted fraudulent misrepresentation under Rule 10-5 enacted under the Securities Exchange Act.

48.     In other words, the failure to disclose his unregistered status was a material omission of an important fact that worked a fraud upon the investors.

49.     This fraudulent violation of Rule 10b-5 triggers the remedy of Section 29(b) which is to render void all contracts and all rights associated with such securities fraud.

50.     In addition to the foregoing, CMB and Hogan made an additional and material misstatement of material fact in the claim contained in Fund offering documents and its Form Ds as filed with the SEC (as recently as 2016) that the limited partnership and investment units that they sell are not "securities" under the federal and state securities laws.

51.     For example, the PPM in which Plaintiff invested, CMB Export Infrastructure Group 48 LP, states at page 62:

> [T]he Partnership believes that the Units likely do not constitute "securities" under the U.S. federal securities laws because, among other reasons, the Investor has no opportunity or expectation to make a profit on his or her total Subscription Price of $550,000. The investment is simply made in order to achieve an immigration benefit. If the SEC or a U.S. court were to determine that the Units are "securities" (which the Partnership believes is unlikely), there can be no assurance that significant liability (and costs prior to such a determination upon an investigation, suit or enforcement action) for failure to comply with any or all such laws and related rules and regulations would not result to the Partnership . . .

52.    The statement that the limited partnership interests are not "securities" is a blatant misrepresentation.   The SEC has long been pursuing regional centers and unlicensed brokers in the EB-5 industry for *securities* fraud. And the SEC is only involved with EB-5 funds in the first place because they are securities, which is why these actions were brought by the *Securities* and Exchange Commission.

53.    As early as *2013*, the SEC even issued an Investor Alert about EB-5 securities fraud entitled: "Investment Scams Exploit Immigrant Investor Programs." Any issuer that was offering limited partnership interests or units via an 'offering' (a term that applies to securities) should have known that they were selling securities.

54.    The courts have ruled that EB-5 investments – even at tiny profit margins – are "securities."   See, e.g., *SEC v. Liu*, 262 F. Supp. 3rd 957 (C.D. Cal 2017)(holding that EB-5 interests are securities).

55.    At page 62 the PPM for Zhan contains the material misstatement that: "Prospective Investors should be aware that they do not have all of the protection afforded by applicable federal and state securities laws . . ."

56.    This language is likely repeated in the PPMs and offering documents for other members of the class, and again is a blatant misrepresentation of the law and remedies available to investors.

57.    Investors most certainly have the protection of federal and state securities laws, which may the strongest in the world, and this is a material fact.

58.     CMB/Hogan also omitted material information about the amount that the foreign finders (who recruited the investors) are being paid.  In fact, FINRA 2040(c) now requires companies that use foreign finders to prepare a separate document for each investor to sign, showing the exact remuneration for such finder – this was obviously not done in this case.  If the investors had known that the foreign finder was making huge money to corral them into the project, they would find such information material to their investment decision.

59.     The attempt by Defendants to hide these remedies from the investors is fraudulent and reckless and it material; the investors have the right to know that they are protected by the securities laws and that the foreign finders who recommended this transaction were paid a particular amount.

WHEREFORE, Plaintiff asks this Court for an Order declaring that the Defendants have made material misstatements and omissions under Rule 10b-5, giving each member of the Plaintiff class a right to void his brokerage arrangement and his underlying investment, allowing full restitution to the Plaintiff class of all commissions and compensation due to the unlicensed brokers and a rescission right to the return of all investment funds, plus costs, interest, and fees.

## Conclusion:

**Prayer for Constructive Trust and Declaration of Right of Rescission**

The aforesaid securities violations can be remedied by the Court through the creation of a constructive trust.  Defendants CMB and Hogan would assemble a list of all person referred to the CMB Funds by unlicensed broker-dealers, and then

deposit into a bank account the brokerage fees and compensation otherwise payable to the unlicensed broker.   A trustee could return each amount to its respective investors, subtracting for contractual attorneys fees due to counsel for Plaintiffs. Concurrently each investor could be notified that he has the right to rescind (or novate/affirm) his investment in the applicable CMB Fund by giving reasonable notice, which could be coordinated by the trustee.   Such actions would resolve the securities violations set forth herein.


Dated:       August 23, 2018


                                             Respectfully Submitted,


                                      _____

Douglas Litowitz
Attorney at Law
413 Locust Place
Deerfield, IL 60015
(312) 622-2848
Litowitz@gmail.com