E-FILED
Monday, 27 August, 2018  05:13:14 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | | |
|---|---|---|
| KEWU ZHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK F. HOGAN; CMB EXPORT | ) | No. 4:18-CV-04126-SLD-JEH |
| INFRASTRUCTURE INVESTMENT GROUP | ) | |
| 48 LP; CMB EXPORT LLC; CMB ILLINOIS | ) | |
| REGIONAL CENTER LLC D/B/A CMB | ) | |
| REGIONAL CENTERS; NK IMMIGRATION | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO STAY AND TO COMPEL ARBITRATION
## AND MEMORANDUM OF LAW

August 27, 2018

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Donald E. Lake, III*
Donald E. Lake, III
1700 Lincoln Street, Suite 4000
Denver, Colorado  80203
Telephone:    (303) 861-7760
Facsimile:     (303) 861-7767
E-Mail:  Tripp.Lake@lewisbrisbois.com

Matthew J. Morris
1403 West Vandalia Street, Suite 300
Edwardsville, Illinois 62025
Telephone:   (618) 307-7280
Facsimile:   (618) 692-6099
E-Mail:  Matthew.Morris@lewisbrisbois.com

Kenneth J. Joyce, *Pro Hac Vice*
Stacy M. Schwartz, *Pro Hac Vice*
110 Southeast Sixth Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone:   954.728.1280
Facsimile:   954.728.1282
E-Mail:  Ken.Joyce@lewisbrisbois.com
E-Mail:  Stacy.Schwartz@lewisbrisbois.com

*Counsel for CMB Export, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .............................................................................................................. 1

MOTION TO COMPEL ARBITRATION ................................................................... 1

    I.      Plaintiff has Agreed to Arbitration as the Sole Appropriate Forum. ....................... 2

    II.    Any Dispute Concerning Whether This Dispute Should be Arbitrated
          Must be Referred to Arbitration .......................................................................... 6

MEMORANDUM .............................................................................................................. 8

    I.      This Matter Must be Moved Into Arbitration. ....................................................... 8

    II.    Any Dispute Concerning Whether This Dispute Should be Arbitrated
          Must be Referred to Arbitration .......................................................................... 9

        A.    Under the Rules of the American Arbitration Agreement, the
              Arbitrator Decides Arbitrability of a Dispute. .............................................. 9

        B.    Although Ultimately a Question for the Arbitrator, Plaintiff's
              Claims Belong in Arbitration. .................................................................... 12

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)..................................................................................................... 10

*Cf., Dome Tech., LLC v. Golden Sands Gen. Contractors, Inc.*,
    No. 3:16-cv-01607(VAB), 2017 U.S. Dist. LEXIS 182816 (D. Conn. Nov. 3, 2017)...... 15, 16

*China Auto Care, LLC v. China Auto Care*,
    (Caymans), 859 F. Supp. 2d 582 (S.D.N.Y. 2012) .................................................. 15

*Dean Witter Reynold, Inc. v. Byrd*,
    470 U.S. 213 (1985)....................................................................................................... 9

*Forkin v. Paine Webber, Inc., Nos.*,
    87-31, 97, 1988 U.S. Dist. LEXIS 15780 (C.D. Ill Nov. 29, 1988) ........................................ 10

*Gerszberg v. Li & Fung (Trading) Ltd.*,
    215 F. Supp. 3d 282 (S.D.N.Y. 2016).................................................................... 13

*Highland HC, LLC. v. Scott*,
    113 A.D.3d 590, 978 N.Y.S.2d 302 (2014) ........................................................... 14

*Kelso Enters. v. A.P. Moller-Maersk A/S*,
    375 F. App'x 48 (2d Cir. 2010) ............................................................................. 16

*Klein v. ATP Flight Sch., LLP*,
    No. 14-CV-1522 (GRB), 2014 U.S. Dist. LEXIS 91102 (E.D.N.Y. July 3, 2014) ................ 13

*Lapina v. Men Women N.Y. Model Mgmt.*,
    86 F. Supp. 3d 277 (S.D.N.Y. 2015)........................................................................ 13

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001).................................................................................... 10

*Louis Dreyfus, 252 F.3d at 225. See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995).................................................................................. 14, 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)................................................................................................. 10

*Pure Holdings, Ltd. v. Descartes Sys. Grp., Inc.*,
    140 F. Supp. 2d 331 (D. Vt. 2001)........................................................................... 15

**Statutory Authorities**

9 U.S.C. § 4................................................................................................................... 8, 9

Federal Arbitration Act, 9 U.S.C. § 4 .......................................................................... 2, 3

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(3).................................................................................................... 2

Fed. R. Evid.201(b)(2)................................................................................................... 13

## MOTION TO STAY AND TO COMPEL ARBITRATION
## AND MEMORANDUM OF LAW

Defendants, *Patrick F. Hogan; CMB Export Infrastructure Investment Group 48 LP; CMB Export LLC; CMB Illinois Regional Center LLC d/b/a CMB Regional Centers; and NK Immigration Services, LLC*, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(3) and the Federal Arbitration Act, 9 U.S.C. § 4, hereby moves to stay this action and to Compel Arbitration. In support thereof, Defendants state as follows:

### INTRODUCTION

Defendants submit this Motion to Compel Arbitration contemporaneously with their Motion to Dismiss as an alternate request for relief. Even if the Complaint did set forth causes of action that are susceptible to relief under federal securities law, the appropriate forum for this dispute is arbitration, agreed by the parties to be conducted pursuant to the rules of the American Arbitration Association.  Plaintiff signed the Subscription Agreement containing a mandatory arbitration provision.  This agreement to be bound by a contract containing an arbitration provision is binding and enforceable.  In the event there is a dispute about whether Plaintiff's claims should be arbitrated rather than litigated in this District Court, that question should, itself, be determined by an arbitrator.

### MOTION TO COMPEL ARBITRATION

Defendants move to compel the matter to arbitration for all future pleadings and proceedings. Plaintiff's Complaint stems from his subscription into a partnership formed to participate in the EB-5 Program administered by United States Citizenship and Immigration Services. Plaintiff represented himself as a qualified foreign investor and contributed $550,000 to become a limited partner of a new commercial enterprise (a limited partnership).Under the EB-5 Program, the Plaintiff's capital contribution was invested into a job-creating project in order for

him to be eligible to become a U.S. permanent resident. The investment and entry into the limited partnership was transacted through multiple interdependent documents, including: a Subscription Agreement (Dkt. 1-1, p. 309); a Limited Partnership Agreement ("LPA") (Dkt 1-1, p. 135); and a confidential private placement memorandum ("PPM") (Dkt. 1-1, p. 1). The Subscription Agreement, LPA, and the acknowledgement page contained within the PPM were all signed by the Plaintiff contemporaneously on September 14, 2015.  The Plaintiff seeks a declaration that he has the right to rescind the subscription and the right to the return of the subscription price.

Those agreements compel the parties to arbitrate.  There can be no reasonable dispute that Plaintiff's claims arise out of the Subscription Agreement and the appurtenant PPM, and so must be heard by private arbitration.

## I.    Plaintiff has Agreed to Arbitration as the Sole Appropriate Forum.

Although Plaintiff now claims that he received only portions of the Subscription Agreement, he does admit that he signed the Subscription Agreement.[1] *Complaint*, ¶¶ 22-24. He then later admits that he received the full copies of the Subscription Agreement and PPM after they were "countersigned." *Id*. Contrary to specific representations in the Subscription Agreement, Plaintiff now claims that he signed the agreements without receiving full copies or understanding what was in them. This does not change the fact that he did sign them.  While Zhan may have committed $550,000 to an investment for the purpose of gaining legal immigrant status in the United States without reading all of the documents, Defendants are entitled to the

---

[1] Should Plaintiff deny in his Response to this Motion that he signed the subscription agreement and other documents attached to the Complaint, then Defendants reserve the right to file an amended motion to dismiss for lack of standing and other, related grounds not applicable under the presumption that Plaintiff did sign the documents.

benefit of Plaintiff's representation and his signature.   Plaintiff is not entitled to prejudice Defendants by depriving them of bargained-for rights under the contract. Notably, the contracts Plaintiff signed contain an express provision attesting that the Plaintiff did receive the full contracts, and that he read and understood them as a sophisticated investor, or that they were translated and explained to him by a trusted advisor.  *Subscription Agreement* (Dkt 1, Ex. 1)[2].

The Subscription Agreement, which was the contract bringing Plaintiff into the partnership, broadly requires arbitration:

> **I. <u>Mandatory Arbitration</u>.** All disputes arising ***in connection with*** this Agreement between the parties that cannot be settled by agreement shall be finally settled by binding arbitration. The arbitration shall be held in New York County, New York and conducted in accordance with the rules and regulations of the American Arbitration Association. The award of the arbitrator shall be final and binding upon the parties. Either party may seek enforcement of any such arbitration award in any court of competent jurisdiction. Notwithstanding the foregoing, any disputes involving the claims of third parties shall not be subject to the provisions of this paragraph.

Ex. 1, Sec. V(I) (emphasis added).

There can be no dispute that all of the interdependent contracts entered between Plaintiff and Defendants are in connection with the Subscription Agreement. The Subscription Agreement contains the agreement to invest, concerns the process by which the investor was to fulfill the subscription, the risk factors associated with the investment, and the classification of the investment instrument. The subscription is fundamentally intertwined with the PPM, the LPA and Escrow Agreement. The Subscription Agreement expressly provides the subscription is binding and irrevocable and that the representations warranties and acknowledgments service the acceptance by the Partnership. *Subscription Agreement* ¶ I(J) and V.(N). All of Plaintiffs claims amount to a post-hoc complaint that he was not adequately advised of the risks of entering the

---

[2] The exhibits to the Complaint are incorporated herein by reference, rather than attached.

partnership due to the lack of notice that the Group 48 partnership was allegedly a security. Clearly, the risk of entering an investment is in connection with the Subscription Agreement.

Additionally, the Subscription Agreement contains several representations made by Plaintiff that pertain directly to the dispute at bar.   Notably, *inter alia*, the Subscription Agreement provides the following:

> A.      Prior to the time of executing this Agreement, the Investor has received a copy of the PPM, including the exhibits thereto, and has carefully read and understands the contents of the PPM, the Partnership Agreement, the Escrow Agreement, and this Agreement. The Investor has had the opportunity to ask questions and receive answers from the General Partner concerning the terms and conditions of this subscription, the Partnership Agreement, the Escrow Agreement, and other matters pertaining to the investment. Further, the Investor has had the opportunity to obtain any additional information from the General Partner to verify the accuracy of the information contained in the PPM and the Investor's understanding of the Partnership Agreement and the Escrow Agreement to the extent the General Partner possesses such information or can acquire it without unreasonable effort or expense. The Investor has received all information the Investor considers necessary or advisable in order to make an investment decision concerning subscribing for a Unit in the Partnership.
>
> . . . .
>
> E.       The Investor has adequate means to provide for the Investor's current needs and personal contingencies, has no need for liquidity with respect to the investment in the Partnership, and has the financial ability to bear the economic risk of this investment, including his or her potential loss.
>
> F.      The Investor, either alone or together with the Investor's purchaser representative, has sufficient knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Unit and protecting the Investor's own interests in connection with the investment. The Investor understands that if a purchaser representative is used by the Investor, the purchaser representative must have sufficient knowledge and experience in financial and business matters that he or she is capable of evaluating, alone or together with other purchaser representatives of the Investor, or together with the Investor, the merits and risks of an investment in the Unit, and must satisfy such other conditions required under applicable law, including Rule 501(h) of Regulation D under the Securities Act.
>
> . . . .

O.    **The Investor either reads and understands the English language or had this Agreement, the PPM, and the other exhibits attached to the PPM translated, at Investor's cost, by a trusted advisor into a language that the Investor fully understands**. The Investor agrees and understands that only the English versions of this Agreement, the PPM, and the other exhibits attached to the PPM shall control and have any legal force and effect, and any document translated into a different language by any person shall have no legal force and effect and shall not bind the Partnership, the General Partner, or any of their respective affiliates. The Investor is solely responsible for understanding the PPM, including this Agreement, and the other exhibits attached to the PPM, in the English language.

. . . .

R.    **The Investor acknowledges that each representation**, warranty, agreement, and acknowledgement made by the Investor in this Agreement, in the Partnership Agreement, and any other document provided to the Partnership by the Investor, and all information furnished by Investor to the Partnership, is **true, correct, and complete in all respects as of the date set forth herein and may be relied upon by the Partnership and the General Partner**, and **if there should be any change in such information prior to this subscription being accepted and the admission of the Investor as a Limited Partner, the Investor will immediately furnish such revised or corrected information to the Partnership**.

Ex. 1, Sec. II (emphasis added).

In fact, the "Acknowledgement" contained within the PPM, signed by Plaintiff, states:

By signing in the space provided below, I hereby acknowledge and represent to the Partnership and the General Partner:

1.    I have received a copy of the Confidential Private Placement Memorandum of CMB Export Infrastructure Investment Group 48, LP dated March 28, 2015 (together with all exhibits attached hereto, the "Memorandum"), and have reviewed the Memorandum or, in the event I required a translated version of the Memorandum, had the Memorandum translated by a trusted advisor into a language that I fully understand.

2.    I understand and agree that only the English version of the Memorandum shall control and have full legal force and effect in all respects.

3.    I understand the risks and uncertainties of the Partnership's business and of making an investment in a Unit.

4.    I am not a U.S. Person.

5. The primary purpose of my investment in the Partnership is to secure conditional permanent residency status through the United States EB-5 Immigrant Investor Program.

Ex. 3, p. viii.

Plaintiff acknowledged in writing that he understood the risks of the investment and that the investment was not being registered as a security. However, even assuming for the purposes of this Motion that it should have been, Plaintiff acknowledged that he had the sophistication to enter the agreement (Ex. 1, Sec. II.F), that he read English or had the documents translated into Chinese (Ex. 1, Sec. II.O.), and that he had received and read a copy of the PPM and exhibits (Ex. 1, Sec. II.A.). Thus, Plaintiff attested that he understood and agreed to be bound by the Subscription Agreement and the PPM, referenced by the Subscription Agreement. Plaintiff's allegations of ignorance are unavailing. The Agreement is signed, and Defendants are entitled to the benefit of that signature.

The parties have plainly agreed to arbitration conducted by the American Arbitration Association ("AAA"), held in New York County, New York and pursuant to the rules of the AAA. All of Plaintiff's claims arise in connection with the Subscription Agreement, and the Complaint should be dismissed and arbitration compelled.

## II. Any Dispute Concerning Whether This Dispute Should be Arbitrated Must be Referred to Arbitration.

The Subscription Agreement governs the forum in which this dispute should be heard. First, the arbitration agreement compels arbitration for all disputes in connection with the Subscription Agreement. This dispute undoubtedly satisfies that requirement, as Plaintiff claims the documents misrepresented the partnership investment. Plaintiff does not claim that the PPM itself is unlawful, only that the means by which Plaintiff was brought into the partnership were unlawful. Those means are fully encapsulated by the Subscription Agreement which provides in

its opening paragraph that "This Subscription Agreement . . . is made by the undersigned investor . . . who by signing below agrees that he or she is subscribing to, and agrees to acquire, a unit . . . of limited partnership interests . . . ." *Id.* at 1.

And although the LPA governs the rights of the partners once in the partnership, such as Plaintiff's newly expressed demand for an inspection of records, the irrevocable subscription to the partnership, i.e. the allegation by Plaintiff that his entry into the partnership was induced wrongfully, is "[s]ubject to the terms and conditions of this Agreement." *Id.* Unquestionably, the process for entry into the partnership is governed by the Subscription Agreement and subject to the arbitration clause.

Additionally, if Plaintiff now claims that he is not subject to the arbitration clause for any reason, the question of whether the arbitration clause should be enforced is a question for an arbitrator.

The FAA states that, upon motion of either party to the contract, a district court shall compel arbitration of claims arising out of that contract if it contains a valid arbitration clause. *See* 9 U.S.C. § 4. The terms of the FAA are to be strictly enforced. The Subscription Agreement's clause requires arbitration to be "conducted in accordance with the rules and regulations of the American Arbitration Association." This clause unequivocally assigns the power to resolve the question of arbitrability, if raised, to the arbitrator. Where, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. Thus, in the event Plaintiff contests whether the arbitration clause applies, any such contest must be decided by an arbitrator in whom the parties vested jurisdiction by their contract.

## MEMORANDUM

As a matter of law, this dispute must be stayed pending the outcome of arbitration pursuant to the Federal Arbitration Act, and the parties compelled into arbitration as dictated by the Subscription Agreement.

## I.      This Matter Must be Moved Into Arbitration.

There is no question that the Subscription Agreement broadly requires arbitration in this case:

> **I. <u>Mandatory Arbitration</u>.** All disputes arising **_in connection_ with** this Agreement between the parties that cannot be settled by agreement **_shall be finally settled by binding arbitration_**. The arbitration shall be held in New York County, New York and conducted in accordance with the rules and regulations of the American Arbitration Association. The award of the arbitrator shall be final and binding upon the parties. Either party may seek enforcement of any such arbitration award in any court of competent jurisdiction. Notwithstanding the foregoing, any disputes involving the claims of third parties shall not be subject to the provisions of this paragraph.

> Ex. 1, Sec. V(I) (emphasis added).

There can be no dispute that the subsequent contracts entered between Plaintiff and Defendants are "in connection with" the Subscription Agreement. Arbitration is the sole venue for disputes arising in connection with the Subscription Agreement between Plaintiff and the Partnership, and this matter should be dismissed from this venue and compelled into arbitration with the American Arbitration Association.

The Federal Arbitration Act ("FAA") states that, upon motion of either party to the contract, a district court shall compel arbitration of claims arising out of that contract if it contains a valid arbitration clause.  *See* 9 U.S.C. § 4. The terms of the FAA are to be strictly enforced. *See Dean Witter Reynold, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration

agreement has been signed"). Moreover, "[a]rbitration is especially favored in resolving disputes involving international commerce . . . ." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir. 2001) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

The threshold question facing any court considering a motion to compel arbitration is whether the parties have indeed agreed to arbitrate.  Since arbitration is a matter of contract between the parties, "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.,* 570 U.S. 228, 223 (2013) (internal quotation marks omitted). The Subscription Agreement here is plain. Any dispute "in connection with" Plaintiff's subscription to the partnership must be submitted to arbitration. Plaintiff's claims attack the express irrevocability of the subscription. The question of whether he may rescind the agreements is unquestionably connected to his subscription.

The FAA requires that a court stay its own proceedings and compel arbitration when a validly executed arbitration agreement has been entered into. *Forkin v. Paine Webber, Inc*., Nos. 87-31, 97, 87-3191, 1988 U.S. Dist. LEXIS 15780, at *29 (C.D. Ill Nov. 29, 1988).

## II.    Any Dispute Concerning Whether This Dispute Should be Arbitrated Must be Referred to Arbitration

Despite the unmistakable meaning of the arbitration provision in the Subscription Agreement, Plaintiff may contend that this Court is the appropriate forum to determine the scope of the arbitration's clauses applicability.  As explained in the Motion and this Memorandum, any such contention would be wrong.

### A.    Under the Rules of the American Arbitration Agreement, the Arbitrator Decides Arbitrability of a Dispute.

The Subscription Agreement's clause requiring arbitration to be "conducted in accordance with the rules and regulations of the American Arbitration Association"

unequivocally assigns the power to resolve this issue to the arbitrator.  The Subscription Agreement's arbitration provision delegates the question of arbitrability to the arbitrator. Specifically, it requires the arbitration to be "conducted in accordance with the American Arbitration Association." Rule 7 of the AAA Commercial Arbitration Rules, in turn, states with respect to jurisdiction that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration Rules, R-7(a). [3]

Where parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *See Dunston v. R.H. Love Galleries, Inc*., No. 07 CV 5113, 2008 U.S. Dist. LEXIS 44118, at *8 (N.D. Ill. June 4, 2008) (citing *Commonwealth Edison Co. v. Gulf Oil Co.*, 541 F. 2d 1263, 1272 (7th Cir. 1976) "[W]here the parties agree to arbitration pursuant to the rules of the American Arbitration Association ("AAA"), the parties incorporate the AAA's rules into the arbitration agreement."

While neither the Supreme Court nor the Seventh Circuit have resolved whether incorporation of the AAA Rules constitutes "clear and unmistakable" evidence that the parties intended the question of arbitrability to be decided by an arbitrator, other circuits have drawn this conclusion. *See Fallo v. High-Tech Inst*., 559 F.3d 874, 878 (8th Cir. 2009) ("[w]e conclude that the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and

---

[3] Given the nature of the transaction involved in this matter, the Commercial Arbitration Rules, rather than the Consumer Arbitration Rules, should apply.  *See* Consumer Arbitration Rules, R-1(a).  However, in the event that the Consumer Arbitration Rules would apply, the Consumer Arbitration Rules have the same rule concerning the  determination of arbitrability. *See* AAA Consumer Arbitration Rules, R-14(a).

unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *see also Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 132 (D.D.C. 2013) (collecting federal appellate and district court cases). Additionally, various district and appellate courts in other circuits, including this circuit, have come to the same conclusion. *See Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 U.S. Dist. LEXIS 100961, at * 6 (N.D. Ill. July 20, 2012) ("[W]hen parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability." (citing *Bayer CropScience, Inc. v. Limagrain Genetics Corp., Inc.*, No. 04 C 5829, 2004 U.S. Dist. LEXIS 25070, at *5 (N.D. Ill. Dec. 9, 2004)); *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, No. 10-cv-6896, 2011 U.S. Dist. LEXIS 8304, at *15 (N.D. Ill. Jan. 28, 2011) ("[T]he Court finds that by specifically incorporating the Commercial Arbitration Rules of the American Arbitration Association into their agreement, the parties clearly and unmistakably evidenced their intention to grant the arbitrator the authority to determine whether their dispute is arbitrable."); *see also Price v. NCR Corp.*, 908 F. Supp. 2d 935, 945 (N.D. Ill. 2012) (holding that by adopting the AAA Rules in their arbitration agreement, the parties agreed that an arbitrator would determine whether the agreement authorized class arbitration).  Thus, District Courts in Illinois have upheld this principle. *See Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC,* 51 F. Supp. 3d 713,719-20 (N.D. Ill. 2014). Thus, the very question of arbitrability should be decided by an arbitrator.

"Rule 7 of the AAA Commercial Arbitration Rules, of which the Court may take judicial notice, states that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction,

including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 (JFB) (GRB), 2014 U.S. Dist. LEXIS 91102, at *30 (E.D.N.Y. July 3, 2014) (quoting AAA Rule R-7(a)).[4] "Thus, the parties' incorporation of the AAA Rules by reference in the arbitration clause is . . . evidence of their clear and unmistakable intent to delegate questions of arbitrability to arbitration." *Id.* at *31; *Gerszberg v. Li & Fung (Trading) Ltd.,* 215 F. Supp. 3d 282, 287 (S.D.N.Y. 2016) ("The Arbitration Clause provides that '[a]ny controversy or claim arising out of or related to this Settlement Agreement . . . shall be settled by arbitration administered by the American Arbitration Association ("AAA") under its commercial arbitration rules,' which, in turn, provide that the arbitrator will decide issues of arbitrability." (alteration in original)); *Lapina v. Men Women N.Y. Model Mgmt.*, 86 F. Supp. 3d 277, 283-84 (S.D.N.Y. 2015) ("[A] party who signs a contract containing an arbitration clause and incorporating by reference the AAA rules . . . cannot [later] disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability." (internal quotations omitted)).

The necessary conclusion, then, is that this Court must grant CMB's Motion to Compel Arbitration for all purposes. In this case, to the extent Plaintiff may argue that the Subscription Agreement's clause is inapplicable, an arbitrator must decide if the Subscription Agreement's arbitration provision governs the parties' rights and duties.

B.    <u>Although Ultimately a Question for the Arbitrator, Plaintiff's Claims Belong in Arbitration.</u>

---

[4] "Courts take judicial notice of AAA Rules on the theory that the AAA Rules are incorporated by reference in the arbitration agreement at issue, or that the AAA Rules are 'a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'" *Klein*, 2014 U.S. Dist. LEXIS 91102, at *30 n.6 (quoting Fed. R. Evid. 201(b)(2)).

Even if the Court elects to determine whether the arbitration provision should be enforced, the Court's decision should be to honor the parties' contractual arbitration provision. The broad, mandatory arbitration provision's reference to the AAA's rules and regulations is clear and unmistakable evidence that the parties intended that any dispute such as the case at bar to be decided by arbitration.

The FAA mandates enforcing arbitration agreements if such agreements are: (1) written; (2) part of a contract or transaction involving interstate commerce; and (3) valid under general principles of contract law. 9 U.S.C § 2. The FAA embodies a federal policy of favoring arbitration, with any doubts with respect to arbitrability resolved in favor of arbitration. *See James v. McDonald's Corp.,* 417 F.3d 672, 676-77 (7th Cir. 2005). To evaluate the validity of an arbitration agreement, federal courts should look to state contract law governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Under Illinois law, agreements to arbitrate are valid as long as there is a mutual promise to arbitrate. *Jenkins v. Trinity Lutheran Church,* 825 N.E.2d 1206, 1213 (Ill. App. Ct. 2005). [5]

The arbitration clause is undoubtedly broad. It reaches "all disputes arising in connection with this Agreement" a broad phrase indicating the "parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement." *Cf., Louis Dreyfus,* 252 F.3d at 225. *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 20 (2d Cir. 1995) (an arbitration clause covering "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause." It therefore triggers a presumption in favor of arbitrability.

---

[5] The Subscription Agreement provides that it shall be governed by New York law. Ex. 1, Sec. V(H). Similar to Illinois law, under New York law, agreements to arbitrate are valid so long as there is a meeting of minds demonstrating the agreement to arbitrate. *Highland HC, LLC. v. Scott*, 113 A.D.3d 590, 594, 978 N.Y.S.2d 302, 306 (2014).

The broad language of the Subscription Agreement's arbitration provision requires the same result here.

Moreover, if reasonable, the PPM and the LPA should be read to compliment, rather than vitiate, the Subscription Agreement's arbitration provision. *Cf.*, *Dome Tech., LLC v. Golden Sands Gen. Contractors, Inc.*, No. 3:16-cv-01607 (VAB), 2017 U.S. Dist. LEXIS 182816, at *13 (D. Conn. Nov. 3, 2017); *see Aviation Fin. Co.*, 2015 U.S. Dist. LEXIS 32043, at *33-34 (ordering arbitration where "it [was] possible — indeed, easy — to read the arbitration clause in the Engagement Agreement and the forum selection clause in the Seaport NDA together").

Where, as here, there are multiple contracts related to the underlying dispute, only some of which contain an arbitration clause, courts commonly find that claims arising in connection with one agreement may still sufficiently relate to another agreement such that the latter agreement's arbitration clause compels arbitration of the entire dispute. *See, e.g.,  Collins & Aikman Prods. Co.,* 58 F.3d at 20. ("[A]lthough claims two and three seek relief under the 1988 Agreement, our analysis is not controlled by the characterization of them in the pleading. Instead, we look to the conduct alleged and determine whether or not that conduct is within the reach of the 1977 arbitration clause."). As the court in *Collins & Aikman Prods. Co.* explained: "The question is not whether the second and third claims arise under the 1988 Agreement, which has no arbitration clause; the question is whether these claims plead conduct that 'aris[es] out of or [is] related to' the 1977 Contracts, which does have such a clause." *Id.* at 21; *see also China Auto Care, LLC v. China Auto Care (Caymans)*, 859 F. Supp. 2d 582, 589 (S.D.N.Y. 2012) (same); *Vt. Pure Holdings, Ltd. v. Descartes Sys. Grp., Inc.*, 140 F. Supp. 2d 331, 335 (D. Vt. 2001) ("Although Vermont Pure attempts to cast its claims under the [first contract] and not the

[second contract], it is clear that its claims are necessarily connected to the [second contract] such that they are covered by its arbitration clause.").

Read plainly, the LPA only addresses under its terms the governance of the Partnership.[6] The PPM should not be read to govern disputes, but rather summarizes both agreements and discloses the risks of the investment. Accordingly, the arbitration provision under the Subscription Agreement should be enforced to compel arbitration of the Plaintiff's claims because the PPM and LPA should be read to compliment, rather than supersede, the arbitration provision in relation to the instant claims, *see Kelso Enters. v. A.P. Moller-Maersk A/S,* 375 F. App'x 48, 49-50 (2d Cir. 2010); *Dome Tech., LLC,* 2017 U.S. Dist. LEXIS 182816, at *13, and the claims can be read to "sufficiently relate" to the Subscription Agreement. *Euro Pac. Capital Inc.,* 15-cv-4410 (VM) 2016 U.S. Dist. LEXIS 8335, at *20-21 (S.D.N.Y. Jan. 21, 2016).

This Court should thus find that both the PPM and the LPA compliment, rather than vitiate, the Subscription Agreement. Neither the PPM nor the LPA explicitly or implicitly terminates the Subscription Agreement as it pertains to the rights and duties of the parties in relation to disputes connected to the Subscription Agreement. Therefore, given the presumption of arbitrability and the indisputable conclusion that the Plaintiff's claims clearly arise from matters pertaining to the Subscription Agreement, the mandatory arbitration provision thereunder requires arbitration of all the claims asserted in the complaint.

## CONCLUSION

---

[6] The Plaintiff's claim for the right to rescind is based upon the full subscription price paid of $550,000. The LPA only governs limited partner's capital contribution of $500,000. The Subscription Agreement governs the full subscription price of $550,000 (including the capital contribution of $500,000 and the syndication fee of $50,000). Because the Plaintiff is seeking the declaration of the right to rescind and receive the full $550,000, such rescission must be of the Subscription Agreement, as that is the only Agreement at issue that deals with the full $550,000. Accordingly, the arbitration provision in the Subscription Agreement would govern.

For the reasons set forth in Defendants' Motion to Arbitrate, as supported herein, this matter should be stayed in this venue pending the outcome of arbitration, and the parties directed to submit this dispute, and any other arising out the same or similar facts and circumstances, to binding arbitration under the rules of the American Arbitration Association.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was electronically filed with the Clerk

of the Court using the CM/ECF system and served electronically to all Parties on this 27th day of

August 2018.

Douglas Eliot Litowitz
413 Locust Place
Deerfield, Illinois 60015
E-Mail:  litowitz@gmail.com

*Attorneys for Plaintiff Kewu Zhan*

*/s/ Donald E. Lake, III*
Donald E. Lake, III