IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| **KEWU ZHAN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:18-cv-04126 |
| v. | ) | |
| | ) | Judge Darrow |
| **PATRICK F. HOGAN**, | ) | |
| **CMB EXPORT INFRASTRUCTURE** | ) | Magistrate Hawley |
|    **GROUP 48 LP, et al.** | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**

Plaintiff Zhan, by the undersigned counsel, hereby replies to the Defendants' Motion to Dismiss as follows:

**Standard of Review**

Judge Darrow has held that when this Court considers a motion to dismiss, it "must accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in favor of the plaintiff." *OFS Healthcare System v. Insperity Group Health Plan*, 82 F. Supp. 3rd 860, 862 (C.D. Ill 2015)(Darrow, J.); *Ellenfeldt v. United C.U.S.D. #304 Bd. of Education*, 84 F. Supp. 3rd 834, 840 (C.D. Ill. 2015)(Darrow, J.)  The overall test is whether the complaint sets forth facts that are plausible and not speculative. *Id.*  By this standard, Plaintiff Zhan's Complaint easily sets forth allegations that if taken to be true – as this Court must – clearly state causes of action that survive a motion to dismiss.

**CMB is Selling Securities -- Risky Securities**

To this day – despite every precedent against them, despite the SEC's opinion, despite case law, despite the opinions of experts – CMB still refuses to admit that the EB-5 limited partnerships it is offering to thousands of investors and which were bought by 900 persons in this fund alone are "securities" which trigger compliance with the federal and state securities laws.

On this point, CMB's Motion to Dismiss is full of tongue-twisting equivocations: "Again, it should be pointed out that nowhere in the PPM did Defendants state that the limited partnership units were not a security . . ." Mot. Dismiss at 12-13. It is time for CMB to come clean and state what everybody already knows: that it is in the business of selling securities, and dangerous ones at that.

Pray tell, why does CMB think that the *Securities* and Exchange Commission is travelling all over the country and successfully getting courts to shut down EB-5 deals for *securities fraud* if these investments are not "securities"? *In Re Ramirez*, 605 Fed. Appx. 361 (5th Cir. 2015)(action for securities fraud in promotion of EB-5 securities); *SEC v. Liu*, 262 F. Supp. 3d 957, 969-970 (S.D. Cal. 2017)("Accordingly, securities laws apply to PP EB-5 fund offering and [the owner's] conduct."); *SEC v. Kameli*, 276 F. Supp. 3d. 852, fn9 (N.D. Ill. 2017)("Courts have specifically held that investments in EB–5 enterprises like those at issue here constitute 'securities' within the meaning of the securities laws."). And with regard to Zhan's immigration lawyer who took brokerage fees (from CMB) while unlicensed, the Central District of California ruled that he

2

committed securities fraud under Rule 10b-5. *SEC v. Feng*, 2017 WL 6551107 (Aug. 10, 2017 C.D. Cal). As early as 2013 – well before the securities offering at issue here – the SEC issued a warning to investors about securities fraud in the EB-5 program. *Investor Alert: Investment Scams Exploit Immigrant Investor Program* (October 1, 2013).

As set forth in the Complaint, not only is CMB selling securities and acting as a broker-dealer, they are also using the investors' money to buy and sell securities in other companies, which makes them an even more obvious investment company. So let's be absolutely clear from the start: they are selling risky securities that are not collateralized by hard assets, and they are triggering federal and state securities laws. A great many EB-5 programs have been shut down for securities fraud, with fortunes lost and lives ruined, just like the 2008 financial crises. CMB cannot bob-and-weave their way around this fundamental point. Maybe they can fool the Chinese by using immigration attorneys and Chinese finders to promote the notion in China that they are selling secured promissory notes, but the reality is that they are selling securities, and toxic ones at that, which are creating a financial crises in Chinese families, just like American families were destroyed in the mortgage crisis in 2008.

Nor can CMB escape responsibility by blaming downstream brokers and affiliates. In 2016, the SEC sued a regional center named American Life Inc. and its operator Henry Liebman for making payments to immigration lawyers who were acting as unlicensed broker dealers. *In The Matter of American Life Inc. and*

*Henry Liebman,* SEC Release number 798042 (June 13, 2016). This is exactly what Hogan and CMB are doing. *The person who pays the unlicensed broker* is responsible for violating federal law.

Just like the Pharmaceutical companies who paid doctors to promote their drugs and thereby exploited the relationship of trust between a doctor and a patient, CMB gave special kickbacks and deals to immigration attorneys to exploit the attorney-client trust to push sales to their regional center. None of this is disclosed to the investor, who plays the role of the dupe. Zhan's broker was found by the SEC and the Central District of California to have committed Rule 10b-5 fraud in setting up transactions, and Plaintiff's counsel has recently been informed of another broker who illegally made referrals to CMB for the exact same project (Group 48 LP). The Exchange Act itself and subsequent case law make clear that any investments created by illegal brokers are void and rescindable by the investor.

So let's drop the ambiguous statements about whether CMB is selling securities. They *are* selling securities, dangerous ones.

**Count II must Stand Because Fraud is Everywhere in this Investment**

The Complaint alleges that Plaintiff Zhan never received the three hundred pages of deal documents set forth as an exhibit to the Complaint, instead getting only twenty-one (21) signature pages. Complaint at ¶ 22. Actually we have found out that the number was lower – it was only eleven (11) pages that Zhan received. These documents were from a broker in league with CMB. In other words, CMB did not conduct any investigation on its own into the investor's assets, suitability,

4

status, or whether the investor even got any deal documents. They completely abdicated their responsibility to the illegal broker, and are hiding behind this broker. That is a losing strategy.

The entire transaction here was tainted by Rule 10b-5 fraud from the very first day, and that is not "conclusion" or "speculation" – it is the opinion of the SEC and the federal district court for the Central District of California:

> The Court finds that Defendant [Zhan's unlicensed broker] violated Sections 17(a) and **Rule 10b-5 based on a scheme to defraud clients** . . .

*SEC v. Feng*, 2017 WL 6551107 *13 (emphasis added).

CMB's response to the clear fraud in this case is actually hilarious or depressing, depending how you look at it. They claim that since they never gave the deal documents to Zhan, he could not have relied on the misrepresentations and omissions in the documents. In other words, their negligence is their excuse for their negligence.

Count II of the Complaint adequately states the elements of a 10b-5 action, which are as follows according to a recent case from the Northern District:

> The elements of a private securities fraud claim based on violations of Section 10(b) and Rule 10b–5 are: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S.Ct. 2179, 2184, 180 L.Ed.2d 24 (2011) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011)).

*Rubenstein v. Gonzalez*, F. Supp. 241 3d 841, 850 (N.D. Ill. 2017). The

requirement of scienter can be satisfied by reckless failure to make a material statement. *Id.* at 854.

Here there is a clear omission to disclose the relationship between the broker and CMB (which the Central District of California found to be a Rule 10b-5 violation), plus a failure to even give any deal documents to the investor, plus a straight up misrepresentation that the investment is not a security and the investor lacks protection under state and federal law, plus a failure to disclose that the investor is going to lose money while the broker and CMB will make millions. These are materials fact that should have been disclosed up front.

In the end, a Rule 10b-5 violation was cooked into the transaction from day one, and then Plaintiff was defrauded once again when he finally received the PPM with the misstatements and omissions of material fact. This is a double-murder, a double-fraud by CMB's affiliates under their auspices of CMB. Accordingly, Count II states a Rule 10b-5 violation and must stand.

**Count I States a Claim for Failure to Register as an Investment Company**

Count I (¶29-47) explains the basic rule of the Investment Company Act that any investment fund with greater than 100 investors must generally register before operating its business and signing any contracts.

CMB is what is known as an "inadvertent investment company" – one that accidentally fell into the registration requirement instead of starting out with the goal of being registered in advance as a selling point (for example, like a mutual fund or ETF that sets out to be registered under the ICA to impress investors of

6

their diligence).  Inadvertent or not – it makes no difference - CMB is still bound by the ICA.  And since the 'visa retrogression' (the wait for a visa for Chinese investors) is now over 10 years and the underlying investment loan made by CMB is 6 years, that creates an additional 4-5 year period where CMB is likely to re-invest investors' money in new securities of different companies, which is another reason it has become an investment company, i.e. a company that makes money by investing in the securities of other companies.  Failure to register is "inadvertent" (accidental) but still has negative consequences such as SEC sanctions and the right of investors to rescission. This notion of an inadvertent investment company is well documented in the EB-5 community, although it is a rather new concept in the courts.  Plaintiff offers some articles as Exhibit 1 to show that this concept is grounded in legitimate legal authority, and he offers these articles not for their truth, since they are hearsay, but to show that this claim should come as no surprise to a large EB-5 player like CMB.

At Exhibit 1, the Court can see that lawyers at Greenberg Traurig, one of the biggest players in the EB-5 space, affirmed Zhan's point about the right of rescission: "Failure to comply with the ICA may lead to substantial civil and criminal liability and penalties, including enforcement actions by the SEC *and rescission actions by investors.*"

Lawyers at Seyfarth Shaw, another big player in the EB-5 space, affirmed Zhan's point: "As a result, if an EB-5 fund were to become an inadvertent, and unregistered, investment company, *the investors in the fund would likely have the right to rescind their investment* and request a return of their money."

7

From Weil, Gotshal: "[S]ome courts have concluded that there is a private right of action under Section 7 despite that section's silence on the question. . . If a contract subject to Section 47 [for failure to register] has been performed, *a court can order rescission* at the request of any party unless equity would prevent rescission."

In July of 2015, a group of leading EB-5 lawyers held a webinar in which they all agreed that the SEC's position was that an EB-5 company with over 100 investors needs to be registered as an investment company, or become subject to claims of investor *rescission*: they didn't like this result, but they all admitted that it was the state of the law and that it was a good reason to keep the number of investors below 100. *See* https://www.eb5diligence.com/webinars-list/the-investment-company-act-2.

Plaintiff Zhan cited the relevant provisions and made the remedy absolutely clear in the Complaint at ¶ 46-47:

> The remedy for [CMB's] failure to register as an investment company is retroactive rescission of contracts entered into by the company, and a ban on the company engaging in interstate commerce. 15 U.S.C. 80a-46(b), 80a-7 and 80a-8. Plaintiff is NOT asserting that he has a private right of action against a registered investment company for some violation of the internal requirements of the ICA, such as the failure of the registered investment company to file a quarterly report: rather, he is asserting that the Defendants failed completely to register.

In other words, Plaintiff Zhan is not suing under a private right created *within* the

8

ICA or the Exchange Act, as it were, to assert that the value of his investment has been lessened by some failure to file a report, or for the company's failure to appoint an independent board of directors. Rather he is suing *from outside as it were*, saying that the company's failure to register makes its actions void from day one. Just as no court would enforce an illegal contract for a kidney or for methamphetamine, no court can force Plaintiff Zhan to stay invested with a non-registered company.

The question presented by this lawsuit is, "What is the consequence for an investment when a company and its broker are required to, but fail, to register with the SEC?" Plaintiff Zhan simply follows the statutes, which say that the consequence is that all investments are void. I can buy painkillers at Walgreens prescribed by a bone fide physician and dispensed by a licensed pharmacy, but I cannot buy painkillers on the street corner; similarly, I can buy a share in a registered mutual fund from a registered broker-dealer, but I cannot buy a share of an unlicensed mutual fund from an unlicensed broker-dealer. Because of the dangers involved, federal law requires that companies and people who deal in securities be registered.

**Count III state a Claim for Broker-Dealer Activity by CMB**

Count III (¶62-71) states with particularity that the defendants are doing brokerage activity (taking transaction-based fees, booking transactions, promoting their investments, marketing, receiving commissions and customer referrals) from their home base in Illinois, without being licensed as a broker-dealer by FINRA, in

violation of the Exchange Act. The Complaint asserts that CMB is participating in the hallmark of brokerage activity: sharing of transaction-based commissions, marketing of securities, and making interstate phone calls and emails to tout their funds. *SEC v. Arcturus Corp,.* 171 F. Supp. 3rd 512 (N.D. Tex. 2016)(listing the factors of classic broker-dealer activity, including taking of commissions and making promotions and solicitations).

The Complaint alleges that CMB shares commissions with its Swiss subsidiary, that it pays foreign finders without complying with FINRA rule 2040(c), that it communicates with potential investors from the United States, that it takes a $50,000 administrative fee and a massive management fee on each $500,000 investment in one of its funds, that it takes client referrals and fees from its overseas affiliates and 'finders,' and that it is tied up a "syndication" of promoters. Complaint at ¶ 62 – 71. Assuming all this to be true – which the Court must do for a Motion to Dismiss – a claim for broker-dealer activity is easily stated. And the remedy for such claim is rescission: this comes straight out of the statute.

The Complaint in this case merely follows the exact sequence of the Exchange Act provisions which mandate registration and then provide that any contract formed in violation of the registration provision is void:

> Section 15(a)(1) of the Exchange Act of 1934 [registration requirement for broker-dealers] makes it unlawful for a person to "effect a transaction in securities" or "attempt to induce the purchase or sale of any security" unless they are registered with FINRA as a broker-dealer. Section 29(a) of the Exchange Act provides that every contract made in violation of any provision of the broker-dealer

10

>registration requirement "shall be void." The voidable transaction gives the investor a right of rescission. Complaint at ¶ 59-60, 63.

The Court must accept as true for the purposes of this Motion that CMB is making sales of EB-5 securities, taking transaction-based commissions, and conducting placement and marketing from their office in Illinois – and in fact Plaintiff's counsel has the emails, brochures, presentations, and other evidence to prove it at trial. If CMB does not believe that we have this evidence, then they are free to move for summary judgment where they will see it all, but the pleadings are wholly sufficient on their face at this stage of the lawsuit.

As background for the Court, at Exhibit 2, this Court will find a collection of articles pointing out that if a regional center (like CMB) is doing promotion, marketing, taking commissions, and other brokerage activity, they could be sanctioned by the SEC or subject to rescission from investors. This is not some wild theory – it is straight from the language of the Exchange Act. Again, these are not offered as precedents, but only to show that this topic (that the failure of a EB-5 center to register as a broker-dealer creates a right of rescission for investors) has been widely discussed in EB-5 circles.

The law firm of Dorsey & Whitney warns that "A violation of broker-dealer laws creates a right of *rescission* under federal and/or state securities laws."

The EB-5 Investors web site warns that EB-5 funds should coordinate with licensed brokers because the consequence of unlicensed brokers is a *rescission right*.

11

The D'Alessio Law Group warns that if there is no licensed broker, EB-5 investors have rights to "*rescind* their purchase of an EB-5 investment and receive their money back."

For these reasons, a category of EB-5 brokers has sprung up to assist regional centers like CMB who don't realize that they are already acting as unlicensed broker-dealers, and one such EB-5 broker, Baker Tilly Capital, says "The duties of a broker-dealer are especially relevant to the EB-5 industry, which has recently seen numerous acts of fraud resulting in the loss of capital and immigration status to innocent investors."

The articles at Exhibit 1 and Exhibit 2 show that it was only a matter of time until a large EB-5 regional center got called out for being an unlicensed investment company and an unlicensed broker-dealer, especially when they are running sixty funds and many thousands of investors.  They failed to register at their own peril.  They didn't think they would get called on it.  They bet wrong.

**Plaintiff Zhan has a Private Right of Action for All Claims**

CMB fails to see that this case is really about their failure to register. Instead of explaining their failure to register, they turn the issue around and accuse the victim – the Plaintiff – of not having standing to sue because he lacks a private right of action.  This is flat wrong.

For example, CMB asserts **"No private right of action is created under the securities laws for failure to register as an investment company under 15 U.S.C. 80a"** and "**no private right of action is created by the securities**

**laws for failure to register as an investment company**." Def. Mot. Dismiss at pp. 2. 6. Keep in mind what CMB told the Court in **bold** above, and then read this:

> Unregistered companies are subject to the prohibitions of the ICA. See 15 U.S.C. 80a-7(a). A private right of action has been found under section 7(a).

*Krome v. Merrill Lynch & Co, Inc.,* 637 F. Supp. 910, 918 (S.D.N.Y 1986) *vacated in part on other grounds regarding class certification,* 110 FRD 693 (1986); *Blatt v. Merrill, Lynch* 916 F. Supp. 1343, 1350 (D. N.J. 1996)("The Court finds that a private right of action exists under section 7(d) [unregistered foreign investment companies] of the Investment Company Act.")  The court in *Blatt* provided a laundry list of cases finding a private right of action under Section 7 of the ICA and proclaimed that "With respect to section 7 of the Investment Company Act, the line of cases recognizing an implied right of action goes back almost forty years." *Id.* at 1349.

    CMB then makes the rear-guard argument that section 47(b) of the ICA - which voids contracts made in violation of the ICA – standing alone does not create a private action all by itself. See Def. Mot. Dismiss at pp. 9-10. But Plaintiff never asserted that 47(b) alone creates a private right of action. The Complaint says at ¶46-7 that there was a predicate violation of section 7, which subsequently triggered sections 8 and then section 47(b). In other words, CMB has failed to find the key cases and it has put the wrong words in Plaintiff's mouth.

    Having wrongfully proclaimed that there is no private action for failure to register under section 7 of the ICA, CMB proclaims that there is no private right of

action for failure to register as a broker-dealer under Section 15 of the Securities Exchange Act.  See Mot. Dismiss at pp. 5, 17: **"No court since [1975] has implied a private right of action under Section 15 or 15(a)(1)"** and **"Plaintiff cannot point to an expressly sanctioned private right of action, and any implied right of action was vacated a long time ago."**

Again, please read the **bold** statement above, and then read the following statement from the federal District Court for the District of Colorado:

> In sum, the Court finds that Congress has adequately evinced – through the text and structure of the relevant statutory language – its intent to afford a private cause of action pursuant to Section 15(a)(1).

*Landegger v Cohen*, 5 F. Supp. 3rd 1278, 1292 (D. Colo. 2013)(finding a private right of action under 15(a)(1) and a right of rescission for all investors in privity with the issuer). Accord *Peraza v. Univa Sports LLC*, 2015 WL 11233130 *3 (S.D. Fla. Feb. 20, 2015)("Thus a private cause of action does exist for a violation of sec. 78o [Section 15(a)(1)]"). If CMB is correct that no court has found a private right of action under Section 15 since 1975, how can there be cases from 2013 and 2015 that find a private right of action? Again, CMB is dangerously misleading this Court into the wrong precedents.

The decision in *Landegger* justifies the remedy sought in the Complaint. The court said that when an issuer uses an unlicensed broker, the contract with the broker is obviously voidable, and if the broker put the investor in privity with an issuer, the underlying investment with the issuer is also void. This isn't a rogue theory by an errant court: it comes straight from the language of sections 15 and 29

14

of the Exchange Act.

CMB's assertion that there is no private action for failure to register as a broker-dealer comes from a unreported case, *Cohen v. Citibank,* 1997 WL 88378 (S.D.N.Y. 1997) that predates *Landegger* and *Pereza*, and which CMB supports with string cites from the 1980s which also predate *Landegger*. Their argument is thick, wordy, tortuous – but ultimately empty.

**To Dismiss this Case is Tantamount to Enforcing an Illegal Contract**

A federal court cannot take an action that would allow an illegal contract to exist, but that is precisely what this Court would be doing if it granted the Motion to Dismiss and legitimated the investment when federal law says that such an investment is unlawful and unenforceable. In *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83-4 (1982), the Supreme Court said,

> It is also well established, however, that a federal court has a duty to determine whether a contract violates federal law before enforcing it. The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in ... federal statutes.... Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power.

That is the situation here: we have a private agreement that was made in violation of federal law. The Court has no business recognizing or upholding any such agreement, lest it be justifying a breach of federal law.

Accordingly, this case is much easier than it appears. Plaintiff Zhan is

merely saying that CMB cannot sell securities and conduct brokerage without a license, so (like an unlicensed 'pharmacist') they cannot create a binding contract, only a null set. If the Court upholds this 'contract,' it is violating the clear language of federal law.

The SEC and another federal court have already done the heavy lifting for this Court in determining that the broker in this case committed securities fraud under Rule 10b-5. Under the rule of *Landegger*, this infects every transaction where the infected broker put the investor and an issuer into privity – such as the investment at issue here. The parties can be returned to their position *ex ante*. There is no reason to do a deep dive into the ICA or the Securities Exchange Act – there is fraud, determined as *res judicata*. Under section 47 of the ICA and 29(b) of the Securities Exchange Act, the investment is rescinded and the case is done.

**Conclusion**

The Federal Rules of Civil Procedure require notice pleading only, meaning a simple statement that puts the defendant on notice of the claims against him. This standard is easily satisfied here.

This case is about a bunch of guys with no formal financial or legal training, who have stumbled onto a scheme for making money from offshore people who are desperate and vulnerable. These guys are not trained to see the subtleties of corporate and securities law, and so they operate out of the back of a gun auction and don't bother to register with the SEC. That is fine when the company is a mom-and-pop operation, but it's no longer fine when the number of investors gets

too high or the company starts engaging in brokerage activities. At that point, they need to hire lawyers to set up the proper registrations in advance of allowing any investments. They didn't do this.

Now it is too late. They cannot undo their failure. They have inadvertently become an investment company and a broker-dealer, and they are tied up with unregistered brokers and they are involved in unlawful recruitment contracts. That creates a right of rescission. The Complaint states all of this with clarity.

WHEREFORE, Plaintiff asks this Court to reject the Motion to Dismiss, since all of the Counts are adequately pleaded.

> Respectfully submitted,
>
> */s/ Doug Litowitz*

Counsel for Plaintiff

### Certificate of Word Count

The foregoing Response to Motion exceeds the 15-page limit but is 4536 words and 27,572 characters including spaces, well below the permissible word and character count of Local Rule 7.1(4)(b)(1).

### Certificate of Service

I certify that on the 9th day of September, I electronically filed this Response to Motion with the Clerk of the Court using the CM/ECF system.

Donald E. Lake III, Lewis Brisbois et al
Attorneys for CMB Export LLC, 1700 Lincoln Street #4000
Denver, CO 80203; 303-861-7760; tripp.lake@lewisbrisbois.com

> */s/ Doug Litowitz*